NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECHNICAL ENGINEERS, AFL-CIO, LOCAL 241 | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 05-484 (JBS) |
| v. | **OPINION** |
| LOCKHEED MARTIN, MARITIME SYSTEMS AND SENSORS (FORMERLY NAVAL ELECTRONICS AND SURVEILLANCE SYSTEMS-SURFACE SYSTEMS), | |
| Defendant. | |

APPEARANCES:

David A. Gaudioso, Esq.
MERANZE and KATZ, P.C.
The North American Building
121 South Broad Street, 13th Floor
Philadelphia, PA 19107
        Attorney for Plaintiff

Gary J. Lesneski, Esq.
ARCHER & GREINER, P.C.
One Centennial Square
P.O. Box 3000
Haddonfield, NJ 08033-0968
        Attorney for Defendant

**SIMANDLE**, District Judge:

        This matter is before the Court upon cross-motions for summary judgment filed on behalf of Plaintiff, International Federation of Professional and Technical Engineers, AFL-CIO, Local 241, Moorestown Chapter ("Local 241") and Defendant Lockheed Martin,

Maritime Systems and Sensors ("Lockheed").  Local 241 brings this claim pursuant to 29 U.S.C. § 185 alleging that Lockheed breached the parties' collective bargaining agreement when it refused to submit to arbitration Local 241's grievance over Lockheed's decision to subcontract certain work.  Local 241's complaint requests an order from this Court requiring Lockheed to submit the grievance to arbitration for a determination on the merits by an arbitrator.  (Complaint.)  However, if the Court finds that the grievance is not arbitrable, Local 241 seeks (a) an order declaring the subcontracting impermissible under the collective bargaining agreement and (b) a judgment in the amount of lost wages and benefits suffered by Lockheed employees (and Local 241 member) affected by Lockheed's subcontracting.

Because the material facts of this matter are undisputed, the parties submitted the cross-motions for summary judgment to resolve the parties' dispute in accordance with Magistrate Judge Ann Marie Donio's May 10, 2005 scheduling order. [Docket Item No. 5.]  As to the first issue (whether this matter is arbitrable), this Court holds that the grievance is not arbitrable.  Paragraph 18.03(b) makes clear that Lockheed's right to conduct its business by means of subcontracting work (including the decision whether or not to subcontract) is not subject to arbitration.  As to the second issue (whether such subcontracting was permissible under the collective bargaining agreement), this Court holds that such temporary on-site

2

subcontracting was permissible under the collective bargaining agreement.  The reasons for the Court's decision are set forth below.

I.    **BACKGROUND**

    A.    **The Parties and the Current Agreement**

Local 241 is a labor organization[1] representing technical employees in the engineering and production departments of Defendant, Lockheed Martin, Maritime Systems and Sensors. Lockheed[2] is a manufacturer of maritime systems that operates a facility at 199 Borton Landing Road, Moorestown, New Jersey.  Local 241 and Lockheed are parties to a collective bargaining agreement, effective July 26, 2002 through August 25, 2006 (the "Current Agreement").  The Current Agreement includes, among other things, provisions relating to the agreement's purpose and union-management cooperation (Article 2), recognition of rights (Article 3), continuity of service (Article 8), bargaining and notice obligations (Article 12), certain general provisions (Article 16), arbitration (Article 18) and lay-off & rehiring (Article 19).

Certain provisions are relevant to the present dispute. First, Paragraph 17.03 contains the procedure whereby Local 241 is

       [1]  Local 241 is the collective bargaining agent for technical employees in the engineering and production departments at Lockheed and a labor organization within the meaning of the Labor Management Relations Act, 29 U.S.C. §152(5) and §185.

       [2]  Lockheed is an employer within the meaning of the Labor Management Relations Act, 29 U.S.C. §152(5) and §185.

3

to alert Lockheed to any grievance that Local 241 has with

management.  Second, Paragraph 18.01 (the "Arbitration Clause")

relates to whether a grievance is arbitrable.  Specifically,

Paragraph 18.01(1)(a) states:

> Any grievance which remains unsettled after having been
> fully processed through the grievance procedure set forth
> in Paragraph 17.03 shall be arbitrable provided it
> involves...[t]he interpretation or application of a
> stated provision or provisions of this Agreement and is
> not excluded elsewhere in this Agreement.

(Current Agreement ¶ 18.01(1)(a), Joint Appendix, Appx. A.)

Paragraph 18.01(2) establishes (a) the arbitration procedures, (b)

the procedures the parties must follow if one of the parties does

not consider the grievance arbitrable, and (c) the standards a

court should use when determining if an issue raised in a grievance

is arbitrable.  To this end, Paragraph 18.01(2)(b) states that,

when determining if an issue is arbitrable:

> [A] court may not proceed under any presumption that a
> request to arbitrate is arbitrable; instead, it is the
> intent of the parties that no grievance will be ordered
> to be arbitrated unless the court finds that the parties
> clearly agreed that the matter would be arbitrable.

(Id. at ¶ 18.01(2)(b)).  Finally, Paragraph 18.01(3)(b) contains

certain exclusions to the Arbitration Clause (the "Exclusionary

Clause") stating:

> It is specifically agreed that the assignment of work
> within the bargaining unit, the establishment or
> modification of any wage, salary, merit aware or job
> classification, or the authority to decide the
> appropriate classification of any employee shall not be
> subject to arbitration. **[Lockheed's] right to conduct**

4

**business by means of subcontracting work shall not be subject to arbitration.**

(Id. at ¶ 18.01(3)(b))(emphasis added).

Local 241 and Lockheed also entered into several "Letters of Understanding" that supplemented the Current Agreement. Letter of Understanding #10 (dated July 26, 2002), which relates to subcontracting, states:

> Effective immediately, [Lockheed] agrees to notify [Local 241]...of Bargaining Unit work that is subcontracted and inform [Local 241] of the circumstances necessitating such subcontracting... when...such work to be subcontracted is expected to exceed 400 hours of work.

(Letter of Understanding #10, Joint Appendix, Appx. B.)

**B.    Previous Negotiations**

Lockheed contends that, commencing with the parties' collective bargaining agreement executed in 1989 and up to and through the Current Agreement, the parties (1) have not limited Lockheed's right to subcontract and (2) have always explicitly agreed that Lockheed's decisions to engage in subcontracting would not be subject to arbitration.  In support of this position, Defendant directs the Court's attention to previous agreements between Local 241 and Lockheed's predecessors,[3] including:

---

[3] Lockheed had a number of predecessors in the maritime sensory business at the Moorestown facility including RCA, then General Electric Corporation, and finally, the Martin Marietta Corporation.

5

- <u>The RCA Agreement</u>.  In 1986, Local 241 and RCA entered into a collective bargaining agreement (the "RCA Agreement").  The agreement contained no restrictions on arbitration and no requirement that RCA provide notice or bargain over subcontracting decisions.

- <u>General Electric I</u>.  In 1989, Local 241 and General Electric entered into a collective bargaining agreement ("General Electric I").  The agreement required GE to provide six months notice when GE was going to "transfer [including subcontracting] ongoing production work."  The agreement also contained a clause stating that GE's "right to conduct its business by way of subcontracting work shall not be subject to arbitration."  (Paragraph 7.09(3)(b) of General Electric I).

- <u>General Electric II</u>.  In 1992, Local 241 and GE entered into a second collective bargaining agreement ("General Electric II").  The agreement modified the notice provision (to 60 days notice if subcontracting would directly decrease the number of represented employees).  The agreement also introduced "decision bargaining" over the notice of intent to subcontract, after which "the Company will make a decision whether or not to subcontract or transfer such work...."  The agreement continued the proscription against arbitration of disputes involving the subcontracting of work.  (Paragraph 7.09(3)(b) of General Electric II.)

- <u>The Martin Marietta Agreement</u>.  In 1995, Local 241 and Martin Marietta entered into a collective bargaining agreement (the "Martin Marietta Agreement"). The agreement contained the same bargaining provision, notice provision and proscription against arbitration of disputes involving the subcontracting of work.  (Paragraph 19.01(3)(b) of the Martin Marietta Agreement).

- <u>The Former Agreement</u>.  In 1995, Local 241 and Lockheed entered into their first collective bargaining agreement (the "Former Agreement").  This agreement retained the same notice and bargaining requirement (notice of duty to bargain where contracting would result in a decrease in the number of bargaining unit employees performing the work) but contained additional notice language and the same proscription

> against arbitration of Lockheed's decisions regarding
> subcontracting.  The Former Agreement was supplemented
> by two Letters of Understanding addressing the issue
> providing notice of subcontracting.

The Current Agreement retains the identical subcontracting language contained in the Former Agreement.  One distinction between the agreements relates to Letter of Understanding #10, which was entered into in connection with the Current Agreement.[4]  Lockheed contends that, since 1989, the company has expressly retained the sole right to make subcontracting decisions.

### C.   **The Present Dispute**

On August 6, 2004, Lockheed gave notice to Local 241 that it would subcontract approximately 640 hours of Drafter-Designer-Electrical ("DDE") work.[5]  Such notice was required by Letter of Understanding #10.  On August 17, 2004, Local 241 filed a timely grievance asserting that Lockheed's decision violated various articles of the Current Agreement (including Articles 2, 3, 8, 16, and 19) and failed to promote cooperation between the parties as required by Paragraph 2.02 of the Current

---

[4]  Letter of Understanding #10 requires Lockheed to notify Local 241 that Lockheed has subcontracted bargaining unit work and inform them of the circumstances necessitating such subcontracting when it is expected to be greater than 400 hours.

[5]  The DDE position is included in the Bargaining Unit Recognition Clause (Paragraph 3.01 of the Current Agreement). The subcontracted work was to be performed at the company's Moorestown plant.

Agreement.[6]  The grievance notice further specified that the decision adversely affected Local 241 member Christopher Vansaghi, an employee on layoff with recall rights under Paragraph 8.02(b) and Article 19 of the Current Agreement.[7]  In response to Local 241's grievance letter, Lockheed denied the grievance, stating that they acted in compliance with the Current Agreement.  On September 24, 2004 Local 241 submitted a letter to Lockheed's Director of Operations seeking to have the matter submitted to arbitration.  On October 7, 2004, counsel for Lockheed refused arbitration, denying that the grievance was arbitrable pursuant to Paragraph 18.01(3)(b) of the Current Agreement.

### D.   **Procedural History**

After Lockheed refused arbitration, Local 241 brought this claim pursuant to 29 U.S.C. § 185 alleging that Lockheed breached the parties' Current Agreement when it refused to submit to arbitration Local 241's grievance over Lockheed's decision to subcontract certain work.  Specifically, the Complaint seeks an

---

[6]  Paragraph 2.02 states, in part:

[Lockheed] agrees to continue the present practice of cooperating with [Local 241] to the best interest of both Parties.

[7]  Mr. Vansaghi was recalled from layoff on December 20, 2004 to his former position at his former salary and benefits. Lockheed claims that he was recalled after the subcontracted work was completed because Lockheed only then projected a sustained increase in workload.

order requiring Lockheed to submit Local 241's grievance to arbitration.  In the event that the Court finds that the issue is not arbitrable, Local 241 asks the Court to (a) enter an order determining that Lockheed's on-site subcontracting is impermissible under the Current Agreement and (b) award damages to Vansaghi for lost wages and benefits.  Pursuant to Judge Donio's Scheduling Order (and according to the Current Agreement), the parties submit cross-motions for summary judgment in order to resolve the dispute.[8]  The Court heard oral argument on this matter of November 15, 2005.

## II.  DISCUSSION

### A.   Standard of Review

A court may grant summary judgment when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[8]   Under Article 18.01(2)(b), the parties agreed that"

[T]he [American Arbitration Association (the "AAA")] shall have no authority to process a request for arbitration...if either party shall advise the [AAA] that...the grievance desired to be arbitrated does not involve the interpretation or application of the Agreement or is otherwise a subject which has been foreclosed from arbitration through negotiations.  In such event, the [AAA] shall have authority to process the request for arbitration...only after a final judgment of a court has determined that the grievance upon which arbitration has been requested raises arbitrable issues and has directed arbitration of such issues.

(Current Agreement, ¶ 18.01(2)(b)).

law."  Fed. R. Civ. P. 56(c).  In the present case, the parties have agreed that the matter is to be decided on jointly submitted dispositive cross-motions[9] and there are no material questions of fact at issue.

   **B.   <u>Whether Local 241's Grievance Raises Arbitrable Issues</u>**

   Under the Current Agreement, a grievance is only arbitrable if it "remains unsettled after having been fully processed through the grievance procedure."  (Current Agreement ¶ 18.01(1)).  The grievance must "be of a proper subject matter," meaning it must involve "the interpretation or application of a stated provision or provisions of this Agreement and is not otherwise excluded elsewhere in this Agreement."  (<u>Id</u>. ¶ 18.01(2)(b)).  If the grievance is the proper subject matter for arbitration and remains unresolved after being processed internally, the matter is submitted to arbitration.  However, if either Local 241 or Lockheed

---

   [9]  Cross-motions for summary judgment:

   are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

<u>Transportes Ferreos de Venezuela II CA v. NKK Corp.</u>, 239 F.3d 555, 560 (3d Cir. 2001) (<u>citing</u> <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968)).  In the present case, however, the cross-movants have agreed that no genuine factual disputes exist and each seeks summary judgment as a matter of law.

advises the arbitrator that the grievance does not involve the
interpretation or application of the Agreement, the grievance will
be arbitrated "only after a final judgment of a court has
determined that the grievance raises arbitrable issues and has
directed arbitration of such issues."  (Id. ¶ 18.01(2)(b).)  A
court reviewing whether a matter raised in a grievance is
arbitrable must apply the following standard:

> It is agreed by the parties that a court may not proceed
> under any presumption that a request to arbitrate is
> arbitrable; instead, it is the intent of the parties that
> no grievance will be arbitrated unless the court finds
> that the parties clearly agreed that the matter would be
> arbitrable.

(Id.)(emphasis added).  Thus, the party seeking arbitration - here
Local 241, must demonstrate upon this record that the parties
"clearly agreed that the matter would be arbitrable."

## 1.  The parties' positions

Local 241 takes the position that the in-house subcontracting
work, raises arbitrable issues and therefore requests that this
Court order the parties to arbitrate the issue.  Local 241 argues
first that the Court should not adopt the "simplistic" view of this
issue advanced by Lockheed - that the Current Agreement
specifically excludes Lockheed's ability to subcontract from the
universe of arbitrable issues.  (Pl.'s Br. at 6.)  Rather, Local
241 argues that the Exclusionary Clause "does not stand alone" in
the Current Agreement but is modified by Letter of Understanding
#10 which obligates Lockheed to notify Local 241 if Lockheed

11

intends to subcontract bargaining unit work in excess of 400 hours. Letter of Understanding #10, according to Local 241, "contemplates that various types of subcontracting will result in different obligations" and therefore, the Exclusionary Clause (including its exclusion of subcontracting issues) should not be blindly applied by the Courts.  (Pl.'s Br. at 6-7.)

Next Local 241 argues that the Court should not view Lockheed's right to subcontract as absolute because viewing the company's subcontracting rights in this manner would serve to "trump and nullify" other provisions in the Current Agreement that address arbitrable issues.  (Id. at 8.)  For example, Local 241 states that Lockheed justified its decision to subcontract work to a third party rather than recall Local 241 member Christopher Vansaghi because "[i]t is the duty of management to make judgments of this nature under Paragraph 3.04...." (Memo from Joseph Wilson to Thomas Howarth, dated 9/7/04, Compl., Ex. D.)[10]  According to

---

[10]  Paragraph 3.04 of the Current Agreement states:

The Company retains the exclusive right to manage its business, including (but not limited to) the right to determine the methods and means by which its operations are to be carried on, to direct the work force and determine its qualifications and to maintain safety, efficiency and order in its plants and operations.

The Article does not modify or limit the rights of the parties or of the employees under any other provision of [the Current Agreement]...nor will it operate to deprive employees of any wage or other benefits to which they have been or will become entitled by virtue of an existing or future agreement between the Company

Local 241, the union could file a grievance related to the company's decision under Paragraph 3.04 and that grievance would be arbitrable under Paragraph 18.01.  However, because Lockheed's decision under Paragraph 3.04 involves subcontracting the Exclusionary Clause in Paragraph 18.01 effectively "trump[s] and nullif[ies] every other protection afforded [to Local 241] by the contract" including those in Paragraph 3.04.  (<u>Id</u>.)  Thus, according to Local 241, Lockheed "cannot simply avoid the broad arbitration provision encompassed in Paragraph 18.01(1)(a) by simply asserting that the entire issue before the Court falls under the subcontracting exclusion...."  (<u>Id</u>. at 9-10.)

Defendant makes several arguments in support of its motion.  First, Lockheed submits that, as a matter of law, the company has the right to unilaterally subcontract work on a temporary basis (unless the Current Agreement provided otherwise).  According to Lockheed, the Current Agreement clearly gives that Lockheed the right to temporarily subcontract work within the facility, subject only to obligations to provide notice to Local 241.  Second, as a matter of law, no party is obligated to arbitrate a dispute unless it has contractually agreed to do so.  Lockheed has not agreed to arbitrate subcontracting issues in the Current Agreement (or any

---

            and the [Local 241]...[and Local 241] has the right to
            process all grievances in accordance with the
            provisions of the Agreement.

   (Current Agreement ¶ 3.04.)

previous agreements between Lockheed -- or a  predecessor -- and
Local 241), and the Exclusionary Clause includes language that
expressly excludes subcontracting issues from arbitration.
Finally, Lockheed asserts that in lieu of arbitration, this Court
is empowered (under 29 U.S.C. § 185) to interpret the Current
Agreement and determine whether the company breached the agreement
when if failed to recall Christopher Vansaghi.  Lockheed argues
that the Current Agreement does not mandate recall of Vansaghi as
the company has the right to temporarily subcontract work without
having to recall workers on layoff.

### 2.   Lockheed's decision to subcontract is not arbitrable

Federal law favors arbitration of labor disputes.  See NLRB v.
Gulf Atlantic Warehouse, Co., 291 F.2d 475, 478 (5th Cir. 1961)(the
right to arbitrate is a "right highly favored by the law.")
However, the Supreme Court has held that "[n]o obligation to
arbitrate a labor disputes arises solely by operation of law."
Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 374 (1974).
Rather, "[t]he law compels a party to submit his grievance to
arbitration only if he has contracted to do so."  Id.; but see
United States Steelworkers of Am. v. Warrior & Gulf, 363 U.S. 574,
584-85 (1960)("In the absence of any express provision excluding a
particular grievance from arbitration, we think only the most
forceful evidence of a purpose to exclude the claim from

arbitration can prevail, particularly where...the exclusion is vague and the arbitration clause is quite broad.")

Thus, this Court must review the language of the Current Agreement to determine if the agreement shows the parties "clearly agreed" to the arbitration of this subcontracting issue.  As noted, the Current Agreement itself supplies the standards to be utilized by this Court when determining whether an issue is arbitrable. First, the agreement states that there is no presumption of arbitrability.  (Current Agreement ¶ 18.02(b).  Rather, the Court will only find an issue arbitrable if the Court finds that the parties "clearly agreed" to arbitrate the issue.  (<u>Id</u>.)  The Current Agreement also contains a broad arbitration clause and an Exclusionary Clause that expressly excludes Lockheed's "right to conduct its business by means of subcontracting" from the universe of arbitrable issues.

In <u>Local 13, IFPTE v. General Electric Co.</u>, 531 F.2d 1178 (3d Cir. 1976), the Third Circuit Court of Appeals reviewed a district court's interpretation of a collective bargaining agreement containing language very similar to that contained in Paragraph 18.01 of the Current Agreement.  In <u>General Electric</u>, the plaintiff was a labor union seeking a permanent injunction  restraining General Electric from transferring certain work out of the bargaining unit and to compel General Electric to submit the issue of removal and transfer of work to arbitration.  <u>See</u> <u>id</u>. at 1179.

15

The district court granted the union's motion for preliminary injunction, finding that the union's grievance related to the transfer of work was arbitrable under the parties' collective bargaining agreement (the "CBA") and holding that other clauses in the CBA trumped the specific arbitration exclusion relating to the transfer of work.  See id. at 1182.  The CBA in General Electric contained a broad arbitration clause stating that:

> [a]ny grievance which remains unsettled after having been fully processed through the...grievance procedure [outlined in the CBA] which involves either: (a) the interpretation or application of a specific provision of this agreement or (b) a disciplinary penalty...

Id. at 1180.  In addition, the CBA contained an exclusionary clause that, among other things, expressly excluded from arbitration all issues related to the "assignment of work."[11]   Id.

The Third Circuit reversed the district court, holding that a fair interpretation of the arbitration clause (including the exclusionary clause and several other clauses) "cannot undo the explicit exclusion of assignment of work from arbitration."  Id. at

---

[11]  The exclusionary clause (Article XI 3(b)) of the General Electric CBA stated:

> It is specifically agreed that matters relating to the management of the Company, including but not limited to the right to control operations and the assignment of work, subcontracting of work, the establishment or modification of any wage, salary or job classifications, or the authority to decide the appropriate classification of any employee shall not be subject to arbitration.

Id.

1183-84.  The <u>General Electric</u> court explained its holding by stating that language of the CBA makes clear that the parties had "'specifically agreed' that transfer of work shall be excluded from arbitration."  <u>Id</u>. at 1184.[12]

This Court follows the holding in <u>General Electric</u> - as it is bound to - and hold that Local 241's grievance does not present an arbitrable issue.  Under the Current Agreement, Lockheed's decisions regarding subcontracting are explicitly excluded from arbitration.  (Current Agreement ¶ 18.01(3)(b)("The Company's right to conduct its business by means of subcontracting work shall not be subject to arbitration.")  Like the court in <u>General Electric</u>, this Court finds that other provisions in the Current Agreement "cannot undo the explicit exclusion" of the issue of subcontracting from arbitration.  <u>General Electric Co.</u>, 531 F.2d at 1184. Furthermore, as the court in <u>General Electric</u> afforded significant weight to the fact that the parties "specifically agreed" that

_____

[12]  The <u>General Electric</u> court also held that the holdings in the <u>Steeworkers Trilogy</u>, <u>United Steelworkers of American v. American Mfg. Co.,</u> 363 U.S. 564 (1960); <u>Warrior Gulf Co.</u>, 363 U.S. at 574; and <u>Steelworkers v. Enterprise Corp.</u>, 363 U.S. at 593, involving the presumption of arbitrability, did not apply because, in the <u>General Electric</u> CBA "the right to transfer work was specifically agreed to and it is indubitably the law that the Court must construe the contract."  <u>General Electric</u>, 531 F.2d at 1184.  Similarly in the present case, the <u>Steelworkers Trilogy</u> presumption of arbitrability in the absence of a contractual exclusion is supplanted by the contractual agreement that "<u>no</u> grievance will be arbitrated <u>unless</u> the court finds that the parties <u>clearly</u> <u>agreed</u> that the matter <u>would</u> be arbitrable." (Current Agreement ¶ 18.01(2)(b))(emphasis added).

issues related to the transfer of work were excluded from
arbitration, this Court affords significant weight to the fact that
the parties have "specifically agreed" that issues of
subcontracting shall be excluded from arbitration.  (<u>Id</u>.; Current
Agreement 18.01(3)(b)).[13]  As such, this Court holds that the
grievance is not arbitrable.

Under these standards, and with the Current Agreement
explicitly stating that "the Company's right to conduct its
business by means of subcontracting work shall not be subject to
arbitration," this Court finds that Lockheed's right to subcontract
in this case is not arbitrable.  As such, the Court will deny
Plaintiff's motion for summary judgement on this issue and will not
order submission of Local 241's grievance to arbitration.[14]

---

[13]  The holding in <u>General Electric</u> is dispositive for
several reasons.  First, there are strong similarities between
the language of the Current Agreement and the CBA in <u>General
Electric</u> (including the agreements' arbitration provisions and
exclusionary clauses).  Second, like the court in <u>General
Electric</u>, in determining whether the grievance is arbitrable,
this Court need not consider extrinsic evidence related to the
parties' bargaining history and past agreements as the parties
"clearly agreed" that the issue of subcontracting would not be
arbitrable and the parties' intent is evident "within its four
corners" of the Current Agreement.  <u>See</u> <u>General Electric</u>, 531
F.2d at 1182.

[14]  The Court disagrees with Local 241's position that
<u>General Electric</u> is distinguishable from the present case,
because (1) the parties expressly excluded the Recognition Clause
from arbitrable review in <u>General Electric</u> CBA and (2) the
<u>General Electric</u> CBA had a no-strike provision that allowed the
union to strike twelve months after the completion of the
grievance to strike (while the Current Agreement contains a
blanket prohibition on striking), General Electric is not

### C.   <u>Vansaghi's Recall Rights</u>

In its Complaint, Local 241 requests that, should the Court find the grievance not arbitrable, the Court declare the subcontracting impermissible under the Current Agreement and enter a judgment in the amount of lost wages and benefits suffered by any and all employees affected.  (Complaint) Specifically, Local 241

---

controlling.  (Pl.'s Reply at 2.)  The Court disagrees that this distinction is of any significance.  For example, the fact that Local 241 could not strike under the Current Agreement (but could under the CBA in <u>General Electric</u>) does not deprive Local 241 of a remedy.  Instead, 29 U.S.C. § 185(a) provides a cause of action related to breaches of collective barging agreement.  <u>See also</u> <u>Orlando v. Interstate Container Crop.</u>, 100 F.3d 296, 298-99 (3d Cir. 1996).  In plain terms, excluding a grievance from arbitration does not per force exclude it from judicial review of an action for breach of the collective bargaining agreement under 29 U.S.C. § 185(a).

In addition, this Court rejects Local 241's argument that the Court cannot enforce the Exclusionary Clause without trumping and nullifying other provisions in the Current Agreement.  In <u>International Assoc. of Machinists and Aerospace Workers v.</u> <u>General Electric Co.</u>, 865 F.2d 902, 905 (7th Cir. 1989), the Seventh Circuit Court of Appeals rejected an argument similar to that employed by Plaintiff with respect to Paragraph 3.04 - namely, that making Paragraph 3.04 excluded from arbitration eligibility would effectively trump other protections afforded under the contract.  Specifically, the <u>IAMAW</u> court stated "[s]ince every grievance the union might file against General Electric would invoke an express provision, the union's position that every grievance is arbitrable would nullify the parties' unmistakably expressed intention not to make every grievance arbitrable." <u>Id</u>. at 906.  Lockheed argues that this Court should follow the <u>IAMAW</u> court's reasoning and reject Local 241's effort to sidestep the "bargained for limitation" (limited right to arbitrate) by arguing that Paragraph 3.04 does not specifically say disputes under this section are not arbitrable.  (Def.'s Br. at 21.)  This Court agrees and finds Local 241's argument to this effect unpersuasive.

argues that the Current Agreement required Lockheed to recall Vansaghi from layoff to perform the 640 hours of in-house DDE work rather than subcontract the work to a third-party.  According to Local 241, Lockheed relied on Paragraph 3.04 of the Current Agreement ("Management Responsibility") to justify this action, stating that "[i]t is the duty of management to make judgments of this nature under [Paragraph] 3.04" of the Current Agreement and concluded that it was more "prudent" to subcontract the work to a third party notwithstanding Vansaghi's recall rights.  (Memo from Joseph Wilson to Thomas Howarth, dated 9/7/04, Compl., Ex. D.)

Having already found that Local 241's grievance relating to Lockheed's decision to subcontract work not arbitrable, this Court may now rule on the merits of whether Lockheed breached the Current Agreement by subcontracting the temporary DDE work rather than recalling Vansaghi.  Local 241's claim that Lockheed breached the Current Agreement is brought under 29 U.S.C. § 185 which provides a cause of action for breach to parties to a collective bargaining agreement.  See 29 U.S.C. § 185(a) ("suits for violations of contracts between an employer and a labor organization...may be brought in any district court of the United States."); see also Orlando v. Interstate Container Corp., 100 F.3d 296, 298 (3d Cir. 1996).

For several reasons, this Court finds that Lockheed did not breach the Current Agreement when it chose to subcontract the

temporary in-house DDE work to a third party rather than rehire Vansaghi from layoff.  First, under Paragraph 3.04 of the Current Agreement, Lockheed's management has broad rights to manage the operations of its business in the manner management see fit. Subject to certain limitations, Lockheed "retains the exclusive right to manage its business, including (but not limited to) the right to determine the methods and means by which its operations are to be carried on [and] to direct the workforce...."  (Current Agreement ¶ 3.04).  Of course, Paragraph 3.04 "does not modify or limit the rights of the parties or the employees... nor will it operate to deprive employees of any wage or other benefits to which they have been or will be entitled...."  As such, when determining whether Lockheed's actions in this case violated the Current Agreement, this Court must be mindful that Lockheed's management negotiated for (and won) wide discretion to manage its business, particularly in the areas enumerated in Paragraph 3.04 (i.e., determining the methods and means of operations, direction of the work force, etc.).

Second, there is nothing in the law or in the Current Agreement that limits Lockheed's right to subcontract work on a temporary basis.  While an employee must collectively bargain a decision to replace employees in an existing bargaining unit with those of an independent contract doing the same work under similar conditions, an employer has the right to unilaterally subcontract work where, as

here, the subcontract was a temporary nature and in no way changed the employer's employment structure.  See NLRB v. King Radio Corp., 416 F.2d 569, 571 (10th Cir. 1969).  Moreover, the Current Agreement does not limit Lockheed's right to subcontract work on a temporary basis or require the company to recall Vansaghi from layoff in lieu of subcontracting.  Paragraph 12.05 of the Current Agreement, which deals with the parties' notice and bargaining requirements, states:

> This Paragraph sets forth the full obligation of the company with regard to notice, bargaining with and information to the Union concerning plant closings, work transfers, all subcontracting and the installation of automated office machines.

> (b) Transfer of Work

> > (1) Notice. The Company will give notice of its intent to transfer work, or subcontract work if such subcontracting of work would directly cause a decrease in the number of representative employees performing such work, a minimum of sixty (60) calendar days in advance of...the subcontracting....

(Current Agreement ¶ 12.05.)[15]   Here, the temporary in-house subcontracting of DDE work contemplated by Lockheed did not decrease

_____

[15]   A review of the prior collective bargaining agreements between Local 241 and Lockheed (and its predecessors) demonstrates that the parties, commencing with the General Electric I in 1989 through the Current Agreement, have not limited Lockheed's right to subcontract but simply required that Lockheed provide notice of the company's intent to subcontract. (See Section I.B, supra.)  Moreover, since General Electric II in 1992, Lockheed has been required to engage in decision bargaining over its right to subcontract only where the subcontract would decrease the number of bargaining unit employees doing work in the bargaining unit (with the final decision of whether to subcontract or not resting squarely in the hands of Lockheed.)

22

the number of bargaining unit employees performing DDE work.  As such, Lockheed was not required to engage in decision bargaining regarding this decision to subcontract.  All Lockheed was required to do, pursuant to Letter of Agreement #10 was provide notice of its intent to subcontract to Local 241.  Lockheed provided such notice on August 6, 2004.

Finally, while the Current Agreement does address rights of a laid-off worker with recall rights, nothing in that section of the Current Agreement requires Lockheed to recall an employee on layoff in lieu of subcontracting temporary in-house work to a third party. (Current Agreement ¶ 19.03(a).)  Specifically, Paragraph 19.03(a) states that "[w]hen [Lockheed deems it] necessary to rehire employees after a lay off...such rehires in an occupation group will be made from the recall pool of employees."   (Current Agreement ¶ 19.03(a)).   Paragraph 19.03(a) continues, establishing the procedures by which employees shall be recalled.  (Id.)

Again, nothing in the recall rights provision limits Lockheed's right to subcontract in this circumstance.  The Court finds that the term "necessary" as used by the parties in Paragraph 19.03(a) means whether such action is necessary from Lockheed's prudent business perspective.  In the case of the 640 hours of temporary in-house DDE work subcontracted to a third party, Lockheed was within its rights to "determine[] that subcontracting rather than short-term recall was the most prudent method of operation to complete the work in

question without adversely effecting cost and schedule." (Memo from Joseph Wilson to Thomas Howarth, dated 9/7/2004, Joint Appendix, Ex. L.)  Thus, a plain reading of Paragraph 19.03 of the Current Agreement shows that Lockheed had no contractual obligation to recall Vansaghi from temporary layoff in this case.  Rather, the Current Agreement expressly gave Lockheed  the authority to make business decisions regarding the subcontracting of work and, in doing so, Lockheed did not breach the Current Agreement.

## III. CONCLUSION

The Court finds that the Local 241's grievance at issue is not arbitrable as the plain-language of the Current Agreement clearly excludes issues involving the subcontracting of work from the agreement's arbitration clause.  Having found that the grievance is not arbitrable, the Court is empowered to be determine whether Lockheed breached the Current Agreement by subcontracting temporary in-house DDE work rather than calling Local 241 member Christopher Vansaghi.  This Court finds that Lockheed did not breach the Current Agreement as (a) the CBA gives Lockheed's management wide discretion to make decisions regarding the operations of the business, (b) nothing in the Current Agreement (or the parties' past agreements) restricts Lockheed's right to subcontract and (c) Paragraph 19.03, the provision of the agreement addressing employee recall rights, does not provide any rights if the company decides

24

to subcontract temporary help.  The accompanying Order will be
entered.


**_June 21, 2006_**                    **_s/ Jerome B. Simandle_**
Date                                 JEROME B. SIMANDLE
                                     United States District Judge